61    77
97    536

O'BYRNE *et al. vs.* FEELEY *et al.*

1. Where a will bequeathed certain property to testator's son, with the provision that he should not have power to dispose of it, his interest being for life only, " but, in case of any lawful issue by him, then the same shall descend to his child or his children for their use and benefit, and to be used and disposed of as they may think proper or fit; but, in the event of no lawful issue from him, the above named property shall be equally divided among my (testator's) relatives named in this will," an estate tail was not created, but a life estate, with remainder over.
2. Where ejectment was brought by a minor, and pending the litigation she died, the action did not thereby abate.
3. A minor over fourteen years of age may make a will disposing of both realty and personalty. Should such minor, being a plaintiff in ejectment, die testate, her legal representative should have been made a party in her stead. It was error to amend the suit by adding demises in the names of her guardian and legal representative.

Ejectment. Estates. Wills. Minors. Parties. Actions. Practice in the Superior Court. Before Judge TOMPKINS. Chatham Superior Court. February Term, 1878.

To the report contained in the decision, it is only necessary to add the following: Pending the suit the plaintiff died, being just under twenty-one years of age. She died testate. Defendants' counsel moved that the action be ordered to abate; the motion was overruled. Plaintiff's counsel amended, so as to make the action proceed on the demise of her guardian and legal representative. To these rulings defendants excepted *pendente lite.*

JAMES ATKINS, for plaintiffs in error, cited as follows: Construction of wills; 2 Chitty's Black. Com., 308 [381]; 3 Gr. Cruise, 173; 12 *Ga.,* 47; 40 *Ib.,* 18; 4 *Ib.,* 60; 1 Chitty's Bl., 307 [380]; Ram on Wills, 64 (98), (109); 2

Jarm., (2); 4 Kent's Com. (12 ed.), 534; 28 *Ga.*, 377. Will conveys life estate, not fee tail, 2 Chitty's Bl., 94 (120-1); Bisset on Est. for Life, 20; Shep. Touch., 206 (105), 209 (107); Coke on Lit., §56; Code, §2252; Cobb's Laws, 169; Preston's Laws of Prop., 186; Shep. Touch., 228 (117); 1 Fearne on Rem., 16-17; 3 Gr. Cruise, 175-6 (135); 28 *Ga.*, 377; Lewis on Perp., 72–5; 1 Fearne, 386; Prest. Laws of Prop., 129-30; 3 *Ga.*, 551; 4 *Ib.*, 161, 377; 1 Coke on Lit. 143a; 2 Chit. Bl., 132 (163-4); 1 Fearne, 3; 2 *Ib.*, 54, §159, note *c*; 1 ·Gr. Cruise, 702; 1 Prest. on Est., 93; Wash. on Real Prop., 545; 16 *Ga.*, 617; 58 *Ib.*, 259; 16 *Ib.*, 557; 2 Chit. Bl., 137; Shep. Touch., 212; 29 *Ga.*, 548; 1 Fearne, 10, 262, 386, 387; 2 *Ib.*, 71 §§196-7; 1 Gr. Cruise, 704, 741; Prest. on Prop., 129-30; Wash. on Real Prop., 556; 1 Fearne, 3, note *f*; 2 Wash on Real Prop., 543 (224-5); 2 Chit. Bl., 135 (169); 1 Prest. on Est., 93; 1 Fearne, 261-3, 266-7, 10, 262, 386, 387; 2 *Ib.*, 71, §§196-7; Prest. Abst. Tit., 111; 2 Wash. on Real Prop., 548, §17; 2 Fearne, 73, 78, 80; 3 Gr. Cruise, 219, §19, note; 1 Fearne, 515, note 1; 1 Wash. on Real Prop., 110, §57; 1 Gr. Cruise, 757; Hotchk. St. of Ga., 332-3; Cobb's Dig., 169; 2 Jarm., 132 (181), 138 (189); Ram on Wills, 66, (121); 2 Ch. Bl., 11, 80; 4 Kent's Com., 535 (587); 3 Gr. Cruise, 228 (69), 272, §25; 2 Coke on Lit., 345, *a*, §650, *b*; 2 Prest. on Est., 88, 102, 106, 119, 146-7, 187, 255-6-7; 1 Salk., 236; 2 Jarm., 137 (190); 4 Kent's Com., 598 (595), 604 (540); 3 Gr. Cruise, 277, §43; 2 Ch. Bl., 11; 2 Prest. on Est., 158; 14 East, 370; 2 Ch. Bl., 84 (108), note 11; 2 Prest. on Est., 70, 77-8, 81, 82, 89, 420; 1 Coke on Lit., 96, note B; 4 Kent's Com., 535-6; 15 *Ga.*, 462; 2 Atk., 103; Shep. Touch., 296 (439); 2 Wash. on Real Prop., 544, 571; 1 Fearne, 120-1; 3 Gr. Cruise, 265; 2 Jarm., 226 (311), 229 (315), 51 (70); 2 Wash. on Real Prop., 603; Ram on Wills, 53, 64 (117); 2 Fearne, 89; 21 *Ga.*, 394; 1 Prest. on Est., 65; 1 Gr. Cruise, 65 (56); 1 Prest. Abst. Tit., 90; 1 Fearne, 370; 2 Wash. on Real Prop. (4 ed.), 548; Lewis on Perp., 212, 120, §13; 1 Fearne, 553-4; Cobb's Dig., 169; 2 Fearne,

330; Douglas, 264; 8 Durn. & East, 484; 1 Vesey, 142; 4 East, 313; 1 Fearne, 373; 1 Gr. Cruise, 718 (217), par. 49, 722 (59); 1 Salk., 224; 1 Ld. Raym., 208; 46 Md., 402; 1 Prest. on Est., 83, 85, 488, 490; Lewis on Perp., 455, 501, 186, 188, 29-30; 2 Wash. on Real Prop., 748; Prest. on Est., 378-80; 1 Coke, 104; Jarm. on Wills, 178 (241); 2 Jarm., 245 (337); 3 Gr. Cruise, 303 (290), §39 and note 371, §54; 2 Wash. on Real Prop., 748, 602-3; 2 Jarm. on Wills, 224, 241, 256, 257 *e*, 239; 30 *Ga.*, 167; 1 Bur. L. Dic., 285; 3 *Ga.*, 564-5; 1 Gr. Cruise, 78, §8, 79, §12,. 88-9, §3; 3 Coke, 16; Lewis on Perp., 240-1, 279, 182, 209; 2 Jarm. on Wills, 270; 1 *Ib.*, 491; 1 Prest. on Est., 198, 197; 3 Gr. Cruise, 193, 174; 15 *Ga.*, 463; 2 Fearne, 286; 2 Prest. on Est., 86, 522; 2 Chit. Bl., 85, note 11; 3. Paige, 9.

Estates tail being illegal, the law will never presume or imply such an estate. Code, §2250; 3 Greenleaf's Cruise, 310, note 1 referring to par. 46; 15 *Ga.*, 145, par. 5; act of Feb. 16, 1799; also act of Dec. 21, 1821, art. ii., sec. i, 3., in Hotchkiss' Statute Law of Georgia, pp. 408-9; 2 Ch. Bl., 308; Lewis on Perp., 187-8; 2 *Ga.*, 121; 3 *Ib.*, 565-6. Suit not abate, Code, §1851; 33 *Ga.*, 452; 13 *Ib.*, 282; 3 Wait's Act. & Def., 39; Adams on Ej., 49, 67, 171. Amendment good, Code, §3479. Not barred by statute, Sup't to Code, §471, c-j; 46 *Ga.*, 120; 43 *Ib.*, 288; Code, §§2686-7; 44 *Ga.*, 647. Mesne profits, 2 Gr. Ev., 369, §334; Ad. on Ej., 335; 47 *Ga.*, 546; 39 *Ib.*, 228; Code, §§2906, 3468; 2 Ch. Bl., 95 (122), note 3; 3 Wait's Act. & Def., 133; 39 *Ga.*, 328. Analogous cases to present: 1 *Ga.*, 97; 2 *Ib.*, 116; 3 *Ib.*, 551; 4 *Ib.*, 52; 7 *Ib.*, 76; 8 *Ib.*, 146, 385; 10 *Ib.*, 495; 12 *Ib.*, 47, 357; 14 *Ib.*, 548; 15 *Ib.*, 457, 122; 16 *Ib.*, 545, 613; 17 *Ib.*, 280, 281; 18 *Ib.*, 545; 20 *Ib.*, 699, 804; 21 *Ib.*, 386, 377; 23 *Ib.*, 129; 24 *Ib.*, 424, 621; 26 *Ib.*, 520; 28 *Ib.*, 377, 541; 29 *Ib.*, 403, 545, 736; 30 *Ib.*, 224, 453, 496, 638, 707, 615; 31 *Ib.*, 730; 32 *Ib.*, 358; 33 *Ib.*, 341; 35 *Ib.*, 40; 51 *Ib.*, 462; 58 *Ib.*, 259, 25.

HARTRIDGE & CHISHOLM; T. M. NORWOOD; J. R. SAUSSY, for defendants, cited as follows: Construction of wills, 46 *Ga.*, 399; 12 *Ib.*, 47; 15 *Ib.*, 122, 147, 141; 3 *Ib.*, 358. Will creates estate tail (hence fee simple by Ga. law), 1 Coke, 104; 70 Pa., 325; 4 Kent, 226–7; acts 1821, p. 95; 2 Jarm., 247; Prest. on Est., 365–6; 1 *Kelly*, 103; 17 *Ga.*, 280; 35 *Ib.*, 343; 23 *Ib.*, 536; 30 *Ib.*, 167; 14 *Ib.*, 558; 1 Sumner, 370; 3 *Kelly*, 563; 4 Barn. & Adolph., 43; Prest. on Est., 353; 8 Sim., 4; 30 *Ga.*, 499; 58 *Ib.*, 23; 6 Cruise M. P., 361; 1 Bur., 38, 50; 2 Levinz, 58; 1 Ventris, 225, 228; 2 P. Wms., 472; 6 Taunt., 209; Cruise, 411; Amb., 379; 1 East, 235; Bulstrode Rep., 7; 1 Vesey Sr., 24; 1 Peere Wms., 605; 4 T. R., 82; 5 *Ib.*, 298; 7 *Ib.*, 537; 1 East, 229; 2 B. & P., 484; 3 East., 548; 1 Y. & J. Exch'r, 511; 2 Bligh, 1; 28 Eng. L. & E., 267; 1 *Kelly*, 97; 2 *Ib.*, 116; 3 *Ib.*, 551; 17 *Ga.*, 280; 20 *Ib.*, 804, 699; 21 *Ib.*, 377; 23 *Ib.*, 129, 131; 24 *Ib.*, 424; 28 *Ib.*, 377, 541; 29 *Ib.*, 736; 51 *Ib.*. 467; 58 *Ib.*, 15; Williams on Real Prop., 178–9, note 1; 4 *Ga.*, 52; 8 *Ib.*, 79; 38 *Ib.*, 154; 8 *Ib.*, 146. 385; 10 *Ib.*, 497; 12 *Ib.*, 357 (contrast); 15 *Ib.*, 122; 16 *Ib.*, 545, 613; 17 *Ib.*, 81, 18 *Ib.*, 544; 19 *Ib.*, 66; 20 *Ib.*, 545; 32 *Ib.*, 358; 35 *Ib.*, 40; 29 *Ib.*, 403; 30 *Ib.*, 224, 453, 496, 642–3, 618, 707; 31 *Ib.*, 730; 48 *Ib.*, 596; 53 *Ib.*, 662; 58 *Ib.*, 259; 1 Yeates, 332; 7 Conn., 250; 70 Pa., 70–3, 501, 509; 1 H. & M., 559; 3 S. & R., 470; 15 Pick., 104; 1 South., 301; 18 John., 368; 2 South., 427; 5 Grattan, 70; 4 Leigh, 90; 40 Pa., St., 29; 4 Watts & S., 437; 37 Pa. St., 31; 3 Rawle, 59–64, 72–75; 64 Pa., 9; 1 B. & Ald., 720; 2 B. & P., 484; 10 Ves., 195; 2 Bligh, 1, 57; 10 Mod., 181; 2 Bligh, 59, note; 45 Ind., 295; 25 Grattan, 73. Infant cannot will realty, 1 Black., 463; 2 *Ib.*, 497; 4 Kent, 564; 1 Keeble, 589; 1 Wms. Ex., 13; 1 Pick., 239, Schley's Dig., 208; Code, §2406; 20 *Ga.*, 736; 47 *Ib.*, 340; Code, §1851. Action abated, 29 *Ga.*, 45; 24 *Ib.*, 494; 30 *Ib.*, 359. Each count a distinct cause of action, 30 *Ga.*, 874; 38 *Ib.*, 439.

WARNER, Chief Justice.

This was an action of ejectment for certain described real estate in the city of Savannah, and mesne profits. Both parties claimed title through the will of Lawrence O'Byrne, who died in 1836. The devise embracing the property in dispute is as follows, viz:

5th item. " I give and bequeath unto my son, James Jeremiah (after paying the above named legacies), the whole of my real and personal estate, consisting of houses, lands, tenements, negroes, etc., as will appear by deeds and titles in my possession, to have and to hold the same for his use, as specified in the following, viz: to receive all the proceeds of the rents, interest, etc., which may accrue from the property for his own and special use, after deducting the necessary expenses on the same property—but in no case whatsoever shall he be allowed, until he shall have arrived at the age of twenty-one years, the control or managment of said property or estate, but allowed such sums as my executors may deem necessary for his education and maintenance. I further command that my son, James Jeremiah, shall not have the power of disposing or selling the above property during his natural life, his possession or benefit of the same being but for his natural life, but in case of any lawful issue by him, then the same shall descend to his child or children for their use and benefit, and to be used or disposed of as they may think proper or fit. But in the event of no lawful issue from him, the above named property shall be equally divided among my relatives named in this will."

James Jeremiah O'Byrne came of age in 1855, and died in September, 1860, leaving one child, the only one ever born to him, Mary Louise O'Byrne, the lessor of the plaintiff, the other lessors being her guardian, administrator, and her executor.

She was born December 12, 1855, and died July 7, 1876, lacking about five months of being twenty-one years of age, leaving a will of all her property.

The action was begun in her life-time, the demises laid being those of herself and of her guardian. After her death, demises in the name of her administrator and of her executor were added by amendment.

On the 9th day of February, in the year 1858, James Jeremiah O'Byrne, whose only title to the property in question was derived from the above quoted item of his father's will, conveyed it in fee simple to William Wright, who, by a deed dated July 2, 1858, and by another deed dated on January 3, 1860, conveyed it to Wylly, who, in turn, conveyed it, on January 24, 1860, to Wiltberger, whose executor is one of the defendants, the other, John Feeley, being the tenant of the Wiltberger estate.

On the trial of the case the jury found a verdict for the defendant, the court holding that James Jeremiah took an absolute fee simple estate in the premises in dispute under the will of his father, Lawrence O'Byrne. A motion was made for a new trial on the grounds therein stated, which was overruled, and the plaintiff excepted.

1. The main controlling question in this case, is whether Mary Louise took an estate tail by inheritance under the words of the will of her grandfather Lawrence O'Byrne, or whether she took the estate as a purchaser under that will. By the common law, there were two methods of acquiring title to real estate, first by *descent*, where the title is vested in a man by the single operation of law, and second by *purchase*, where the title is vested in him by his own act or agreement. Descent or hereditary succession, is the title whereby a man on the death of his ancestor acquires his estate by right of representation as his heir-at-law. Title by purchase, as contra-distinguished from acquisition by right of blood, includes every other method of coming to an estate, but merely that by inheritance wherein the title is vested in a person not by his own act or agreement, but by the single operation of law. 2d Bl. Com., 201–241.

By the second clause of his will the testator gave $5,000.00 to be equally divided between his father, brothers, and sister,

naming them respectively. By the fifth clause thereof he devised an estate to his son James Jeremiah for life, "but in case of any lawful issue by him, then the same shall descend to his child or children, for their use and benefit, and to be used or disposed of as they may think proper or fit:" The testator obviously used the words "lawful issue by him," in the sense and meaning of children. So that the will of the testator may be fairly construed to mean, but in case my son James Jeremiah shall have any lawful child or children, *then* the same shall descend to or go to his child or children for their use and benefit, and to be used or disposed of as they may think proper or fit. The scheme of the testator appears to have been, in disposing of his property, and such undoubtedly was his general intention, to give a life estate therein to his son, and if he should have any child or children, then, to give it to such child or children, for their use and benefit, and to be used or disposed of as they may think proper or fit. The child or children, of James Jeremiah, were necessarily to have a legal existence during his life, a life then in being, and not dependent on a contingency too remote, but one that must happen within the period of his life and could not happen afterwards. Mary Louise was the child of the testator's son, James Jeremiah, and took the estate as a purchaser under the will of her grandfather, and not by inheritance as an heir-at-law of anybody. The fact that the issue or children of James Jeremiah, were to have the property for their use and benefit, and to be used or disposed of as they might think proper or fit, negatives the idea that Mary Louise took an estate tail by inheritance, under the law, to the property in dispute. That the testator did not intend to create an estate tail is further manifested by the fact that in the event his son left no lawful issue, he gave the above named property to his relatives specially named in the second clause of his will; he never contemplated that any one should take his property as heir or heirs, by operation of law, but on the contrary specified in his will who should

take it.   There was none of his property left by him to be disposed of by the law of inheritance, and therefore the objects of his bounty took as purchasers directly from him, it being his general intention that his son, James Jeremiah, should take a life estate in it, but if his son should have lawful issue, child or children, then such child or children should take it for their use and benefit, and to be used or disposed of as they might think proper or fit ; in other words, they were to have the absolute dominion over it and dispose of it as they should think fit and proper.   The testator did not stop there, but declared, in the event his son should have no lawful issue, the above named property should be equally divided among his relatives named in this will.   The testator left nothing to be disposed of by the law of inheritance, and whoever took any of his property, took it as purchasers under his will, and not as heirs-at-law. This son took an estate for life under the will, but if he had any lawful issue, (meaning children) then his child or children were to take his property under the will, and dispose of it as they might think fit and proper.   But in the event his son had no lawful issue (meaning child or children,) then the testator's relatives who were specially named, were to take his property under the will, to be equally divided between them.   There is no intention manifested by the testator, in his will, that anybody should inherit his property by operation of law.

In Doe *ex dem.* of Cooper *vs.* Collis (4th Term Rep., 299), Lord Kenyon, after reviewing the cases said, " But considering them all together, I think this position is to be collected from them, that in a will, ' issue,' is either a word of purchase or limitation, as will best answer the intention of the devisor, though in the case of a deed it is universally taken as a word of purchase."   We think there can be no doubt, for the reasons already given, as to what was the general intention of the devisor in the case now before us, and that the words of the will by which he disposed of his estate should be construed as being words of purchase, and

not words of limitation so as to vest the title to the estate in the first taker under the act of 1821. The ruling of the court below, therefore, that James Jeremiah, the son of Lawrence O'Byrne, took an absolute fee simple estate in and to the premises sued for, under his father's will, was error.

2. In regard to the exceptions taken to the ruling of the court *pendente lite* by the defendants in error, which appear in the record, there was no error in the ruling of the court that the action did not abate on the death of Mary Louise O'Byrne, the lessor of the plaintiff, and that a recovery could be had upon the declaration, although the lessor was a minor. The declaration was not void for that reason. The question as to the cause of action being barred by the statute of limitations was not insisted on here, and we express no opinion upon it.

3. The allowing the declaration to be amended by inserting the several demises, as therein stated, was error. Mary Louise O'Byrne, the lessor of the plaintiff, having died testate, the first proper step to have been taken would have been to make her legal representative a party to the suit. Since the adoption of the Code, infants over fourteen years of age may make a will, and as real and personal property are placed on the same footing as to distribution in this state, they are as capable of making a will of the one species of property as the other; the Code makes no distinction in regard to the different species of property which an infant over fourteen years of age may dispose of by will, and we presume did not intend to make any. Code, §2406. As there is to be a new trial in the case, we have passed upon the defendants' bill of exceptions *pendente lite,* as found in the record. For the reasons already stated—the court erred in overruling the plaintiffs' motion for a new trial.

Let the judgment of the court below be reversed.