## HARTSFIELD COMPANY *v.* SHOAF.

No. 11698. MAY 13, 1937.

*Robert T. Efurd* and *Mose S. Hayes,* for plaintiff.
*R. B. Pullen,* for defendant.

HUTCHESON, Justice. The Court of Appeals certified the following question to this court for instructions thereon: "Where a contract of 'guaranty' which provides that 'in consideration of one dollar and other valuable considerations, and the extension of credit not exceeding two hundred seventy dollars to J. A. Hamrick by Hartsfield Company,' the guarantor 'guarantees' Hartsfield Company 'against loss on account of said extension of credit to the extent of the unpaid balance together with interest not exceeding three and one half per cent. a month on the unpaid balance of principal,' and also provides that 'it is specifically understood that this is a guarantee, and that Hartsfield Company will exhaust its legal remedies against said borrower, but that upon the exhaustion of its legal remedies against said borrower the undersigned will become immediately liable for the amount of the unpaid balance

of the principal of said debt, together with said interest and any accrued court costs, and thereupon may be proceeded against on this guarantee severally and without any reference to any security that may have been taken or to any other guarantor or guarantors,' does the obligation in this contract in which the guarantor obligates himself to the Hartsfield Company to pay 'any accrued court costs,' where this means to pay the accrued court costs in a suit which the Hartsfield Company might institute against the principal debtor, J. A. Hamrick, to recover the indebtedness referred to, operate to increase his legal liability as guarantor, so as to render the contract of guaranty null and void and unenforceable by the Hartsfield Company against the guarantor, by reason of section 13 of the small-loan act approved August 17, 1920 (Ga. L. 1920, p. 215, sec. 13), wherein it is provided as follows: 'In addition to the interest herein provided for, no further or other charge or amount whatsoever for any examination, service, brokerage, commission, or other thing, or otherwise, shall be directly or indirectly charged, contracted for, or received, except the lawful fees, if any, actually and necessarily paid out by the licensee to any public officer for filing or recording in any public office any instrument securing the loan, which fees may be collected when the loan is made or at any time thereafter. If interest or charges in excess of those permitted by this act shall be charged, contracted for, or received, the contract of loan shall be null and void, and the licensee shall have no right to collect or receive any principal, interest, or charges whatsoever,' or by reason of section 17 of that act, that 'No loan for which a greater rate of interest or charge than is allowed by this act has been contracted for or received, wherever made, shall be enforced in this State,' or by reason of the provision contained in section 18 of that act, which makes it a penal offense for any one to violate any of the provisions of sections 13 and 17 of the act?"

We assume that the loan guaranteed was one made under the small-loan act referred to, by a licensee under the act. As we construe the question, we are asked to determine whether the guarantor referred to, by obligating himself to pay "any accrued court costs," contracted to pay a charge not authorized by the small-loan act. What is the meaning of the words quoted, as used in the particular contract before the court? We think the proper

construction of the phrase depends greatly upon the meaning of the descriptive term "accrued." The verb "accrue" is derived from the Latin, "ad" and "creso," to grow to; and its several parts, "accrue," "accrued," and "accruing," in their generally accepted sense are used to denote something which is to be added to or attached to something else. 1 C. J. S. 759; Johnson v. Humbolt Ins. Co., 91 Ill. 92, 95 (33 Am. R. 47). "In the past tense, 'accrued' is used in the sense of due and payable; vested." 1 C. J. S. 733; Dictionary of Words and Phrases (English), 11. Webster defines the word "accrue" as (1) "to increase; to augment (2) to come to by way of increase; to arise or spring as a growth or result; to be added as an increase, profit, or damage." Black defines the word "accruing" as meaning "inchoate; in process of maturing; that which may or will ripen into a vested right, an available demand, or an existing cause of action." The meaning of the word is dependent somewhat on the facts of each case and the *objects to be accomplished* either by the statute or contract in which the word is used. In re Pincus Clothing Co., 5 Fed. Supp. 365, 367; Hoffman v. U. S., 53 Fed. (2d) 282, 286. A contract of guaranty is primarily one to pay the debt of another, which may be due and payable by the principal debtor to the creditor, upon the default of the principal debtor. *Penn Tobacco Co.* v. *Leman,* 109 *Ga.* 428 (34 S. E. 679); *Nance* v. *Winship Machine Co.,* 94 *Ga.* 649 (21 S. E. 901); *Fouché* v. *Cherokee National Bank,* 18 *Ga. App.* 569 (90 S. E. 102); *Kalmon* v. *Scarboro,* 11 *Ga. App.* 547 (75 S. E. 846). That is primarily the purpose of the contract of guaranty in the present case. The fact that the contract here provides that the liability of the guarantor is to arise only after the creditor has exhausted its legal remedies against the principal debtor, does not alter the expressed and legal purpose of the contract to pay the obligations of the principal debtor to the creditor. Bearing this in mind, the additional obligation to pay "any accrued court costs" we think necessarily refers to any court costs attaching to and forming a part of the obligation of the principal debtor to the creditor by reason of any suit by the creditor against the principal debtor to recover the indebtedness guaranteed, as distinguished from all court costs arising out of, or by reason of, a suit against the debtor or any proceedings thereunder, whether the

debtor be the party cast therein or not. If the principal debtor be sued and is the party cast therein, as a matter of law he is obligated to pay the court costs therein, and such court costs become a part of the judgment rendered against him. Code, §§ 24-3401, 24-3410. A stipulation in a contract subject to the 'provisions of the small-loan act, which merely provides for the payment of a charge which the licensee as a matter of law would be entitled to collect, is not an additional charge prohibited by the act. *Southern Loan Co.* v. *McDaniel*, 50 *Ga. App.* 285 (2) (177 S. E. 834). Nothing to the contrary was ruled in division 3 of the opinion just cited. There the contract was to pay any court costs *legally incurred* by the holder of the note, necessarily by its terms obligating the debtor to pay the licensee charges which the licensee otherwise would not be authorized to collect, and therefore contrary to the provisions of the small-loan act.

In arriving at the construction placed upon the contract of guaranty we have not been unmindful of the rule that where the terms of a contract of guaranty are ambiguous, they will be construed most strongly against the maker of the contract. *Carson* v. *Hurst*, 137 *Ga.* 640 (74 S. E. 52, Ann. Cas. 1913A, 1086); *Small Co.* v. *Claxton*, 1 *Ga. App.* 83 (57 S. E. 977); *Hargroves* v. *Cooke*, 15 *Ga.* 321, 325; *Peck* v. *Precision Machine Co.*, 20 *Ga. App.* 429 (93 S. E. 106). Assuming that the words "any accrued court costs," as used in the contract of guaranty, are ambiguous, or susceptible of two meanings, and that if the legality of the contract were not involved in the construction thereof this court should, under the above rule, so construe the contract as to increase the contractual liability of the guarantor, thereby construing the contract most strongly against him, we are of the opinion that, under the circumstances of the present case, we have, by construing the contract so as not to defeat the liability of the guarantor thereunder, properly construed it most strongly against him. But be that as it may, the paramount rule of the construction of contracts is to ascertain the intention of the parties. A corollary to that rule is that an intention contrary to the law should not be read into a contract; and that where a particular word or words in a contract are susceptible of two meanings, one of which would uphold the contract and render it legal, and the other would render it inoperative or illegal, that meaning which

**382**

renders the contract legal will be adopted as the intention of the parties. *Palmer Brick Co.* v. *Woodward,* 138 *Ga.* 289, 294 (75 S. E. 480); *Equitable Loan & Security Co.* v. *Waring,* 117 *Ga.* 599 (44 S. E. 320, 62 L. R. A. 93, 97 Am. St. R. 177); *Dismukes* v. *Parrott,* 56 *Ga.* 513; *Virginia Bridge & Iron Co.* v. *Crafts,* 2 *Ga. App.* 126 (58 S. E. 322); *Southern Loan Co.* v. *McDaniel,* supra. It follows from what is said above that the question must be answered in the negative.

*All the Justices concur.*